HON. A. J. WILLARD, CHIEF JUSTICE.
HON. HENRY McIVER, ASSOCIATE JUSTICE.
HON. A. C. HASKELL, ASSOCIATE JUSTICE.

---

HEARD NOVEMBER TERM, 1877.

CASE No. 590.

GOURDIN ET AL., EXECUTORS OF MRS. MOULTRIE, v. EDWARD
C. SHREWSBURY, J. B. ADGER AND WIFE, MRS. A. H. SMITH
AND MRS. ANNA M. BROWN, ET AL.

A testator bequeathed and devised his residuary estate to his executors to
sell and re-invest proceeds in stock, which stock was given to testator's two
daughters, C. and L., during their natural life, and the share of the daugh-
ter first dying was to go to her surviving children, their heirs, &c.; but if
such daughter first dying left no child surviving, but a husband surviving,
then "said husband shall have such a proportion thereof as the law gives
of the wife's estate in case of intestacy under the legislature of this state,"
and the remainder to the surviving sister, her heirs, &c., forever. And
upon the death of the surviving sister "the stock and property hereby
immediately bequeathed to such survivor, or which she may take at the
death of her sister" was to go to her surviving children, their heirs, &c.;

A

but if she left "no child living at her death, and shall leave a husband surviving her, then the husband shall have such a proportion of the said stock and property as the law gives of the wife's estate in case of intestacy under the act of the legislature," and remainder to child or children of pre-deceased sister, if any, then living, "and if there be no child of her deceased sister, then the said remainder shall go to my legal representatives in fee simple."

C. died first, leaving a husband surviving but no children, and half of the property given to C. by the words above recited, passed to L., the surviving sister. Afterwards L. died without issue and left no husband surviving. *Held*—

1. That the property received by L. immediately from her father's estate under the residuary clause of his will, passed at L.'s death to the "legal representatives" of testator.

2. That the one-half of C.'s share of the stock and property, which passed to L. after C.'s death under the directions of testator's will, passed at L.'s death to testator's "legal representatives" under the terms of this will.

3. That "legal representatives," as used in this will, meant such persons as answered the description of legal representatives of testator at the time of the happening of the contingency that vested the estate; and therefore C. and L. having died before such vesting, their legatees and representatives were excluded.

Before REED, J., Charleston, March, 1875.

Stephen Shrewsbury died in 1815, leaving of force a last will, which was admitted to probate in the same year. That clause of his will which the court construes in this case, is set out in full in the Circuit decree and again in the opinion of the Chief Justice.

At the time of his death the testator left surviving him two daughters, Caroline O., (afterwards Mrs. Dickinson,) and Sarah Louisa, (afterwards Mrs. Dr. Moultrie,) and two brothers, Edward and Jeremiah, and one sister, Mary Rogers. Caroline O. Dickinson died before her husband, in 1833, without issue, and one-half of her property was transferred to her husband, and one-half to the trustees of her sister, Sarah Louisa Moultrie, under the will of her father and her marriage settlement. Sarah Louisa Moultrie survived her husband and died without issue in 1874, and leaving of force a last will and testament, whereby, after some trifling legacies, she gave her property to Mrs. Sarah Lee. Mrs. Lee claimed the property under the will of Mrs.

Moultrie, as Mrs. Moultrie's absolute property. Mrs. Dickinson's administrator claimed that the testator died intestate as to the remainder of that portion which passed immediately to Mrs. Moultrie under testator's will, after the determination of her life estate therein; and that such intestate remainder vested at testator's death in his two daughters.

Edward Shrewsbury, the brother, died before Mrs. Moultrie, and his children, who were alive at the death of Mrs. Moultrie, are the defendants, Edward C. Shrewsbury, Anna H. Smith and Elizabeth K. Adger. Mrs. Rogers died before Mrs. Moultrie, and her child, who survived Mrs. Moultrie, is the defendant, Anna H. Brown. And the defendants, Edward C. Shrewsbury, Anna H. Smith, Elizabeth K. Adger and Anna H. Brown, claim to be the only " legal representatives " of testator.

Jeremiah Shrewsbury, the brother, had one daughter and one son; but all died before Mrs. Moultrie. This son and this daughter left issue who survived Mrs. Moultrie, but being grand nieces and nephews, are not parties in this action and have filed no claim.

The decree of the Circuit judge is as follows :

DECREE.

Stephen Shrewsbury died in 1815, leaving of force his will, which contains the following residuary clause: " All the rest, residue and remainder of my estate, of what nature or kind soever and wheresoever the same may be, I give, devise and bequeath unto my executors, hereinafter named, or to such of them as shall qualify and act under this will, and to the survivor of them, his heirs, executors, administrators and assigns forever, in trust, nevertheless, to sell and dispose of the same, except as hereinafter excepted, for cash or credit, and on such terms as they may deem best, and to invest the proceeds of such sale in stock of the United States, stock of this state, or any bank stock of this state, which said stock of the United States, stock of this state, or bank stock of any bank in this state, I give, devise and bequeath to my dearly beloved daughters, Louisa Shrewsbury and Caroline Shrewsbury, share and share alike, to

them and each of them during the term of their natural life, and from and after the death of either the said Louisa or Caroline, then if my daughter aforesaid first dying shall leave a child or children living at her death, I give, devise and bequeath her share of the stock aforesaid to such child or children, his, her or their heirs, executors, administrators and assigns forever, but if she shall have no child living at her death, but a husband surviving her, then my will is that her said husband shall have such a proportion thereof as the law gives of the wife's estate in case of intestacy, under the act of the legislature of this state, and the remainder I give to her sister, her heirs, executors, administrators and assigns forever.

"And it is further my will, that at the death of the survivor of my said daughters, Louisa and Caroline, the stock and property hereby immediately bequeathed to such survivor, or which she may take at the death of her sister, shall go to such child or children as she may leave living at her death, his, her, or their heirs, executors, administrators, or assigns forever. But if she shall leave no child living at her death, and shall leave a husband surviving her, then the husband shall have such a proportion of the said stock and property as the law gives of the wife's estate in case of intestacy, under the act of the legislature, and the remainder shall go to the child or children of her deceased sister, if any be living at the death of my said daughter so surviving as aforesaid, his, her, or their heirs, executors, administrators, or assigns forever, and if there be no child of her deceased sister, then the said remainder shall go to my legal representatives in fee simple.

"And I do hereby empower my executors, or such of them as shall qualify, to make good and sufficient titles to all purchasers of the property or estate sold under this will."

At his death the testator left two daughters as his sole heirs and next of kin—Sarah Louisa and Caroline. Caroline (afterwards Mrs. Jeremiah Dickinson) died in 1833, before her husband, and under the residuary clause quoted, and her marriage settlement, one-half of her property was transferred to her husband, and one-half to the trustees of her sister. Sarah Louisa

married Dr. James Moultrie, in 1818, and, having survived him, died without issue in 1874. The property she took under the above residuary clause was settled on her on the terms of the will, and that which she took under her mother's settlement, on such terms as to give her an absolute estate in case she died without issue living at her death and surviving her husband. The part she derived from her sister is not embraced in the settlement.

At his death the testator left, also, two brothers and one sister. These died before Mrs. Moultrie, and their children (the nephews and nieces of the testator) who were alive at her death, claim the property derived by Mrs. Moultrie from her father, as the testator's legal representatives and next of kin at the death of Mrs. Moultrie, to the exclusion of Mrs. Moultrie's estate, and of the testator's great nephews and great nieces.

The executors of Dr. James Moultrie and his legatees are parties to the suit.

The life estates given by the will of Stephen Shrewsbury to his daughters, Louisa and Caroline, were to vest in remainder in the "legal representatives" of the testator on the happening of two contingencies as to each of said daughters, to wit, dying without issue and leaving a husband surviving them. With Caroline both these contingencies happened, and her share of the estate, therefore, became vested. On her death without issue, but leaving a husband surviving her, such portion of her estate as the statute of distributions gave him went to her husband, and the other part to her surviving sister, "her heirs, executors, administrators and assigns forever," under the will of her father, and following the statute of distributions.

With Louisa (Mrs. Moultrie) the case was different. She died without issue, but also without leaving a husband surviving her. Only one of the two contingencies, on which the estate given her for life by her father, would have vested in the remaindermen having happened, she took that portion of her estate derived immediately from him, not under the will, but as the portion of the estate which came to her as his heir-at-law and legal representative, her sister having died without leaving

issue surviving her.   The other portion of her estate she took in fee from her sister, as before stated.

This construction creates an intestacy as to the portion of his estate which it was contended the testator gave by will to his surviving daughter for life, with remainder over; and yet the result is, as I take it, in perfect harmony with his intentions. He directs that if one of his daughters die without issue, but leaving a husband surviving her, the husband shall take such share of her estate as the statute gives him, and the remainder shall go to her surviving sister in fee simple forever.   Both of these contingencies having happened to Caroline, her estate passed under her father's will.   But the same contingencies as applicable to Mrs. Moultrie did not happen.   She died, it is true, without issue surviving her, but she also died without leaving a husband surviving her.   If her husband had survived her, both contingencies—and I hold both to be necessary,—would have happened that were necessary to carry the estate over.   Her husband would have taken the share to which he was entitled under the statute, and the residue would have gone to the legal representatives of the testator as the remaindermen under his will.   This, I think it clear, is in accordance with the intentions of the testator.   His purpose was to direct, unmistakably, what should go with her estate, if she left no child, but a husband surviving her.   He intended the husband to take what the statute would give him—no more—and the balance, if the predeceased sister left no child, should return to his "legal representatives."   Not referring to the probability that she might never marry, or marrying, that the husband might die before her, and making no further disposition of the estate, the inference is irresistible that he intended, if his last surviving daughter had neither child nor husband, to leave the estate in her hands, to be enjoyed and disposed of as she might elect.   Hence, I hold that the estate of Mrs Moultrie, at her death, passed under her will.

The above result, viz., that the testator's daughter and distributee-at-law shall not be disinherited of her portion of her father's estate, except by express provision of his will, or neces-

·sary implication; and that the absolute gift to her of the half of her sister's portion "shall not be divested, except on the happening of the precise event, or *events* [in this case her death without children, and with a husband surviving,] upon the happening of which the substituted gift was made by the testator to depend," (*White* v. *Baker*, 2 *DeG.*, *F. & J.* 61,) is supported by numerous authorities, but I do not think it necessary to do more than refer to *Fulham* v. *Wicket, Willes* 309; 1 *Jarman on Wills*, 465; *Notes* 2 *and* 3, 750; 2 *Jarman on Wills* 741; *Gordon* v. *Blackman*, 1 *Rich. Eq.* 61; *Crossby* v. *Smith*, 3 *Rich.* 244; *Harrison* v. *Foreman*, 5 *Ves.* 209; *Thornhill* v. *Hall*, 2 *Cl. & Fin.* 35; *Roper on Leg.* 479, 481, 603, 609, 624; *Lowry* v. *Bryan*, 4 *Rich. Eq.* 262; *Shaw* v. *Monefeldt*, 6 *Rich. Eq.* 240; *Ketchin* v. *Beaty*, 5 *Rich. Eq.* 83. Any other result would have been making a new will for the testator, and that, too, when he has not acted "capriciously, without any intelligible motive contrary to the ordinary mode in which men in general act in similar cases," and when his language is "unambiguous," and does not admit of "two constructions." This is impossible. *Gordon* v. *Gordon, L. R.*, 5 *H. of L.* 284; *Hall* v. *Warren*, 9 *H. of L. Cas.* 427, 428; *Glover* v. *Adams*, 11 *Rich. Eq.* 264.

The estate derived by Mrs. Sarah Louisa Moultrie from her mother, it is conceded, passed by her will, and it is so decreed.

Leave to apply for any order deemed necessary for the settlement of the estates of Dr. and Mrs. Moultrie is reserved.

From this decree, the defendants appealed upon the following grounds:

1. That Mrs. Moultrie at the death of her sister, Mrs. Dickinson, took nothing by the intestacy, either of her father or her sister, but the share of Mrs. Dickinson, at her death, passed under the will of Stephen Shrewsbury, one-half to her husband and the other half to Mrs. Moultrie, for such interest and estate therein as her father's will gave her.

2. That that portion of the testator's property which, under his said will, passed to Mrs. Moultrie at the death of her sister, was, by the terms of his said will, given to her for the same

estate, and subject to the same limitations over as that portion which she took under her father's will directly—as he declares in these words : "And it is further my will that at the death of the survivor of my said daughters, Louisa and Caroline, the stock and property hereby immediately bequeathed to such survivor, or which she may take at the death of her sister, shall go to such child or children," &c. That in accordance with this view, the share she took at the death of her sister was assigned to the trustees of her marriage settlement made upon the terms of her father's will.

3. That as to the whole property given by the testator to Mrs. Moultrie, it must have passed under the residuary clause to the legal representatives of the testator as a valid disposition of the residue, or the testator must have died thereof intestate at the time of his death, at which time Mrs. Dickinson was equally entitled with Mrs. Moultrie to every part of his estate whereof he died intestate, and therefore that the decree is inconsistent with itself in declaring that Mrs. Moultrie took the whole, whereas Mrs. Dickinson took one-half, which half must go to her administrator for the benefit of her legal representatives, of whom her husband, who survived her, was entitled to one-half of her estate.

4. That the ultimate remainder over of the residue of the testator's estate, took effect upon the death of Mrs. Moultrie without issue, the provision for the husband being only a provision for him if he survived her, but not a condition or contingency, upon which the ultimate gift over depended to take effect.

5. That these defendants, and these only, are the legal representatives as designated in the will, at the time Mrs. Moultrie died, and are entitled to take under the ultimate limitation of the will.

The appeal was heard by the Supreme Court, November Term, 1875. On the 20th of June, 1876, it was ordered to be re-argued, " so far as may be necessary for the proper determination of the following question, which covers one of the points raised in it. In the event the estate is to vest in his " legal representatives," and assuming that the said words are to be taken

and accepted in the sense of distributees under the statute, in the devise of this testator, who are to be comprehended in the term?

It was re-argued on February 15th, 1877. The changes soon after occurring in the *personnel* of the court made a third argument necessary, which was had at November Term, 1877, when it was argued in full upon all the points made in the case.

*Messrs. McCrady & Son, Brewster & Burke, Augustine T. Smythe* and *Henry A. M. Smith,* for appellants.

I. Is the limitation over to the legal representatives of the testator good?

The great rule of equity that overrides all considerations in the construction of wills, is to ascertain, first, the intent of the testator, and then to carry it into effect, if it be legally possible. In arriving at what a testator's intent was, it is sometimes important to know what his intent was not. It is submitted that the Circuit judge erred in holding that the testator "intended, if his last surviving daughter had neither child nor husband, to leave the estate in her hands to be enjoyed and disposed of as she might elect," and "that the estate of Mrs. Moultrie, at her death, passed under her will." Because—

*First.* It was testator's manifest intention here to make provision first for his daughters, then his grandchildren, if he should have any; failing these, for his nearest blood relations.

*Second.* The daughters are expressly given only a life estate; the gift, absolute in terms, to the surviving sister, being in the next clause reduced to a life estate.

*Third.* That while provision is made for the husband surviving either or both of his daughters, such provision is only a *proviso,* and in no way a condition affecting the devise over.

*Fourth.* That to hold the immaterial incident of the survivorship of the husband a *condition precedent* to the limitation over taking effect, will be to make the testator stultify himself, and to render his intentions of none effect.

*Fifth.* That the contingency of the husband's survivorship is a mere immaterial incident, affecting only the portion of the estate devised to them, and in no way a condition precedent to

the taking effect of the devise over to the testator's grandchildren, or next of kin. 1 *Doug.* 63 ; 1 *Cowp.* 40 ; 1 *Durn. & East* 346 ; (March, 1876,) *Eng. L. R.*, 2 *Ch. Div.* 348.

*Sixth.* That the devise to the husbands, in case of their survivorship, makes the limitation over a conditional one, * * * but the contingency of such survivorship is not such a condition precedent as without which the devise fails. *Moore* 486 ; 1 *Eq. Cas. Abr.* 245 ; 1 *Atk.* 422. " The solid, substantial distinction is whether the testator meant it as a condition." *Lord Loughborough in* 1 *Bro. C. C.* 301 ; 5 *Burr.* 2703 ; *Hutton* 118 ; 3 *Atk.* 782.

When a devise is made after a preceding executory or contingent limitation, or is limited to take effect on a condition annexed to any preceding estate, if that preceding limitation or contingent estate never should arise or take effect, the remainder over will, nevertheless, take place, the first estate being considered only as a preceding limitation, and not as a preceding condition, to give effect to a subsequent limitation. This doctrine, as particularly applied to contingent remainders, is fully discussed by Mr. Fearne, in a former part of his work. See *ch. I.*, § 10, *p.* 233. 1 *Fearne on Remainders* 508 ; 2 *Strange* 1092. Words of condition may be taken as words of limitation where there is a remainder over. 1 *Eq. Cas. Abr.* 245, *fol.* 10 ; 1 *Ves.* 420 ; 2 *Vern.* 151 ; 2 *Wils.* 356 ; 1 *Wils.* 105 ; 1 *Atk.* 386 ; 12 *Mod.* 128 ; 1 *Sir W. Bl. Rep.* 638.

*Seventh.* That the substantial intention of the testator is to provide for his own blood relations, and in such cases the courts will disregard words that may apparently import a condition, provided the substantial intent of the testator be carried out. 4 *DeG. & J.* 194 ; 1 *Fearne on Remainders* 509.

*Eighth.* If the survivorship of the husband was a condition precedent to the taking effect of the limitations over, then the death of either daughter *after* her husband would cause an intestacy of her father's estate as to the portion of the stock devised to her for life, and the court will not so construe a *residuary clause* as to cause an intestacy. 2 *Mer.* 385 ; *M. R. in* 4 *Ves.* 400, 407 ; 4 *DeG. & J.* 194 ; 1 *Russ.* 220 ; 10 *Sim.* 45 ;

*Hall, V. C.,* in *E. L. R.,* 2 *Ch. Div.* 348; 1 *Bailey* 103; 4 *Rich. Eq.* 265.

*Ninth.* To construe the will so as to allow Mrs. Moultrie to dispose of this property after the termination of her life estate therein, would be to disinherit the testator's next of kin, or " distributees-at-law," living at his daughter's death, and that shall not be done " except by express provision of his will or necessary implication." Circuit decree and cases cited. 1 *Jar.* 465. The position of Circuit decree and of respondents is, that Mrs. Moultrie took some interest which could only be " divested upon the happening of the precise event or events, upon the happening of which the substituted gift was made by the testator to depend." These are the words in which the rule is laid down in *White* v. *Baker;* but the rule requires three things to be found in the will. 1st. A gift *vested* by the terms of the will which may be defeated. 2d. A contingency of event or events to defeat it. 3d. A substituted gift, made to depend upon the happening of the event or events. There is no vested gift in Mrs. Moultrie. 1 *Jarman on Wills* 411, 412; 1 *Hill Ch.* 360. The cases relied on by respondents differ widely from the case here, in this.: that the estates vested in the donees in this case were not absolute estates, to be curtailed or defeated, but life estates, to be followed by other estates and interests. In this case the legal representatives do not seek to defeat a vested interest; they claim that provision is made for them after the vested interests have ceased and not before. See language used by the judges in 1 *B. & A.* 137.

*Tenth.* As the property was in hands of trustees, after Mrs. Moultrie's death they held for the legal representatives of testator, so that she, being dead, could not be included. 6 *Ves.* 45; *McM. Eq.* 231.

II. Who are to be comprehended in the term " legal representatives?"

They are here to be understood in the sense of " next of kin," or " rather the persons taking the personal estate under the statute of distributions." 2 *Jar.* 39; 1 *Coll.* 6; 2 *Beav.* 70. The

context shows that the testator never meant to apply the words " legal representatives " to his daughters; they are applied only after his children and grandchildren, and daughters' husbands have been provided for, and they can only mean his collateral relations, living and to be ascertained at the time of his surviving daughter's death. 1 *Desaus.* 237 ; *Bailey Eq.* 517. The rules applicable to this subject are different according to the class to which the cases are referable.

(1.) When it is a devise of realty.

In such cases the rule has been laid down, that where real property is limited over to a class after a prior life estate, although the remainder be contingent, yet the class shall be referred to the death of the testator, and that the circumstance that the life tenant was of that class at that time, shall not prevent him taking under the latter description. 3 *Bro. C. C.* 234 ; 3 *East* 278 ; 2 *Myl. & K.* 800 ; 4 *S. C.* 16 ; 2 *Jarman on Wills* 59. The working of this tendency is strikingly exemplified in the old rule of law, whereby a fee might be limited over on a fee in personalty, although not in realty.

(2.) When the bequest is of personalty, but the limitation over is a simple vested remainder upon a life estate. In these cases, the subsequent estate being certain, *must vest immediately* upon the testator's death. 4 *Bro. C. C.* 207.

(3.) Where the bequest is of personalty, and the limitation over is *contingent.* Here, since the event on which the estate is to vest is contingent and uncertain, the vesting cannot take place until the contingency occurs on which the estate is to vest; and where there is a limitation over upon contingency to a class, the persons to take cannot be ascertained until the contingency happens. *Jones* v. *Colbeck,* 8 *Ves.* 38 ; *Coop. Ch. R.* 272 ; 3 *Myl. & K.* 232 ; 1 *Ves., Sr.,* 111 ; 1 *Bro. C. C.* 293, *and note;* 3 *Ves., Jr.,* 486 ; 13 *Sim.* 52 ; 13 *Sim.* 290 ; 2 *Jarman on Wills* 56 ; 3 *DeG., F. & J.* 113. Where the remainder upon a contingency is to persons " thereto entitled according to the statute of distributions," a reference to the statute *prima facie* refers to the period of testator's death. The words " legal personal representatives " are more flexible than the words " next of kin." 23 *Beav.* 169.

Our state courts have adopted same rule. And where an estate is to be distributed at some future day amongst a class, and not to persons by name, all who can bring themselves within the description at the period of distribution are entitled to participate. 2 *McC. Ch.* 214; 2 *McC. Ch.* 440; 1 *Hill Ch.* 311; 9 *Rich. Eq.* 470; 4 *Strob. Eq.* 37; 4 *Rich. Eq.* 413. *Glover* v. *Adams,* 11 *Rich. Eq.* 264, although upon a deed, is cited as in harmony with other cases. The case of *Seabrook* v. *Seabrook,* 10 *Rich. Eq.* 495, is strongly relied on by respondents, but it has no application to present case, because—

(1.) It is a devise of realty.

(2.) The testator directed that realty should "revert to his estate" if contemplated limitation over did not take effect. Not so in this case. Again, Seabrook v. Seabrook was one of the most contested, and is still one of the most doubted cases that has ever been decided by our courts. See note of reporter, 10 *Rich. Eq.* 495.

The rule laid down in *Cole* v. *Creyon* is recognized throughout the courts of this country. 1 *McCarter* 32; 3 *Jones Eq.* 167; 15 *N. Y.* 322.

*Mr. H. E. Young,* for executor of Mrs. Moultrie and for Mrs. Lee.

I. The part originally given to Mrs. Moultrie she takes as next of kin to her father, and cannot be divested of it without the happening of the *very case* which the will declares shall disinherit her. This constitutes two-thirds of the present estate.

The heir cannot be disinherited, except by express devise or necessary implication. *Willes* 309; 2 *Jarman on Wills* 741. It prevails in America, and embraces personal as well as real estate. 1 *Jarman on Wills* 465, *notes* 2, 3; *Redf. on Wills* 433, 435; 6 *Paige* 612, and is fully sustained in our own cases. 1 *Rich. Eq.* 61; 4 *Strob. Eq.* 203; 3 *Rich. Eq.* 244; 2 *Desaus.* 454.

II. The portion taken after her sister's death is given to Mrs. Moultrie absolutely, and can be divested only as above, viz., by

the happening of the *very case* which the will declares shall divest such absolute gift.

III. The *very* and *only* case in both instances under this will, is that she shall "have no child living at her death, and shall leave a husband surviving her." She left no child, but she also left no husband surviving. The rule, embracing above propositions, is thus expressed by Sir R. P. Arden (Lord Alvanley): "It is *perfectly clear* that where there are clear words of gift, giving a vested interest to parties, the court will *never* permit that absolute gift to be defeated, unless it is *perfectly clear* that the *very case* has happened in which it is declared that their interest shall not arise." 5 *Ves.* 209. See, too, 1 *Jarman on Wills* 639; 2 *DeG., F. & J.* 61. Instances of the above are found in 5 *Ves.* 209, *supra ;* 9 *Ves.* 233; 3 *Mod.* 410; 4 *Mod.* 411 ; 1 *Phil.* 303; 2 *Coll.* 124; 2 *Russ. & M.* 577. See, too, 7 *Sim.* 86 ; 8 *Beav.* 578; 21 *Beav.* 31 ; 25 *Beav.* 417. A benefit bestowed in one part of an instrument by terms clear, unambiguous and liable to no doubt, can only be taken away by express and unambiguous words in another part. 2 *Cl. & Fin.* 35. See 1 *Jarman on Wills* 950, *ss ; Roper on Leg.* 479, 481, 603, 619, 624; 2 *Redf. on Wills* 603, 649; 2 *Williams on Ex'rs* 1267–1274. Our cases sustain the rule. 4 *Rich. Eq.* 262; 5 *Rich. Eq.* 202; 6 *Rich. Eq.* 240. Particular attention is directed to our cases of *Ketchin* v. *Beaty,* 5 *Rich. Eq.* 83, and to *Haynsworth* v. *Haynsworth,* 12 *Rich. Eq.* 121, which are very like to the case before us, and also to the English case of *Boyce* v. *Boyce,* in 16 *Sim.* 476.

Appellants rely upon the following positions on these propositions:

(1.) That the clear intention of the testator was to benefit them as his next of kin. The best reply to this is in words of Lord Caines in *L. R.,* 5 *H. of L., p.* 284. See, too, remarks of Lord Chancellor Campbell in 9 *H. of L., at pp.* 427, 428, and 1 *Redf. on Wills, pp.* 435, 436.

(2.) That it clearly was not intention of the testator to make a double provision for his daughter, Mrs. Moultrie, viz., for life, and then also in fee. This is conclusively answered by *Glover*

v. *Adams,* 11 *Rich. Eq.* 264. See 1 *Strob. Eq.* 114; *Buist* v. *Dawes,* and *Hicks* v. *Pegues,* 4 *Rich. Eq.* 413; 7 *Rich.* 311; 10 *Rich. Eq.* 561—all of which cases involved the construction of a will, and 14 *Rich.* 146, when a deed was under consideration.

(3.) That the word "remainder" in the clause, "the said remainder shall go to my legal representatives," is a technical word, and means the whole estate, except the few trifling legacies mentioned in the first part of the will. This is not the meaning, as its use throughout the clause shows: in the sentence quoted, it can only mean the remainder which sisters' children (if any) would have taken.

(4.) That the double contingency upon which the estate is to arise, applies to the estate limited to her husband and sister's children only, and not to that claimed by the nephews and nieces. Counsel then comments upon cases cited by appellants' counsel, and says: There is an essential difference between the cases cited by the appellants on this point and the present one.

(*a.*) In none of them was either the heir disinherited or a vested estate divested by the decrees.

(*b.*) They all refer to conditions precedent and not conditions subsequent. See 2 *Williams on Ex'rs* 1267, 1269, 1272.

(*c.*) Their inapplicability to present case is best shown by full quotation of rule as stated by Mr. Jarman. 1 *Jarman on Wills* 753.

(5.) That inasmuch as the testator was dealing with the "rest, residue and remainder" of his estate, it is clear that he did not intend to die intestate as to any part of his estate, and that therefore, such a construction as prevents an intestacy is absolutely acquired of the court. They rely on *Booth* v. *Booth, Leake* v. *Robinson, Lett* v. *Randall,* and *Oddie* v. *Brown.* But see 3. *Bro. C. C.* 474; 14 *Beav.* 461; 2 *DeG., M. & G.* 110; 2 *Redf. on Wills* 616; 1 *Roper on Leg.* 363; 1 *Hill Ch.* 97; 1 *Strob. Eq.* 96.

IV. That the final bequest of the testator being to his "legal representatives in fee simple," in other words, to "his distrib-

utees under the statute," even if the above propositions are not sustained, still the distributees which take, are those who were such at the testator's death, viz., his daughters, Mrs. Moultrie and Mrs. Dickinson.

This seems clear under the cases adjudged in this state. 1 *Strob. Eq.* 114; 4 *Rich. Eq.* 413; 7 *Rich. Eq.* 311; 10 *Rich. Eq.* 561; 1 *Rich. Eq.* 264; 14 *Rich. Eq.* 146. See, too, 2 *Jarman on Wills* 2; 2 *Redf. on Wills* 414; 1 *Vern.* 35; 2 *Keen* 230. The case in 13 *Sim.* 613, is strikingly apposite. In the United States, the rule seems to be generally adopted; 2 *Wall., Jr., C. C.* 368; 25 *Ind.* 63; 1 *Jones (N. C.)* 221; 7 *Watts & Serg.* 288.

The cases in this state thus establish beyond controversy that a devise or bequest to one's heirs, distributees-at-law or next of kin, is a gift to those who at the instant of the testator's death are his *hæredes facti* under the statute of distributions; in other words, to his next of kin, including husband or wife, as the case may be. In this particular case the next of kin and " distributees under the statute " of the testator, at his death, were his two daughters; and these only can take under the designation of legal representatives (distributees under the statute) in the clause under discussion; and, as said, Mrs. Dickinson has already had her half.

Appellants say that where there is a bequest to A, remainder to B, with limitation over upon contingency to a class, the class to take is to be ascertained at the time the estate vests. This is discussed by Mr. Jarman in his 2d volume, *52 and *53, and cases cited by appellants are reviewed and doubted at pp. 54–68. See, too, 2 *Williams on Ex'rs* 1123, and 16 *Beav.* 507. Three of appellants' cases deserve particular notice. *Minter* v. *Wraith*, 13 *Sim.*, is an exception to the general rule, because of certain peculiar features therein. *Cooper* v. *Denison*, 13 *Sim.*, is also a case very different from ours. These last two cases were regarded by Sir Lancelot Shadwell as exceptions from the general rule, as will be seen by reading his decree made only a year or so later in *Urquhart* v. *Urquhart*, 13 *Sim.* 613. Appellants' third case, *Lees* v. *Massey*, 3 *DeG., F. & J.*, was decided because testator could not mean his only daughter by using the plural

word "relations," and by using the words "share and share alike." Lord Chancellor Campbell held that the general rule was well settled in *Bullock* v. *Downs*, 25 *Beav.* 55. This general rule is that "where there is a bequest to one for life, and after his decease to the testator's next of kin (by virtue of the statute of distributions,) the next of kin to take, are the persons who answer that description at the death of the testator." 9 *H. of L. Cas.* 12. In England there has been a long contest in this matter, which does not exist in this state. Next of kin, without further, does not there mean under statute of distributions, but the nearest in blood relationship—*e. g.*, a child and a father—are equally near, and would take equally under such a gift. 10 *Cl. & Fin.* 215. Stephen Shrewsbury's will refers, at almost every step, to the statute of distributions, and in this state "next of kin" means "next of kin under the statute," and never anything else. *Bullock* v. *Downes*, 9 *H. of L. Cas.* 1–31, is worthy of special notice. Appellant's position, that daughter, would not be called "legal representatives," seems inspired by remarks of Sir William Grant in *Jones* v. *Colbeck*, 8 *Ves.* 38; but see this case commented on in 2 *Jarman on Wills* *55.

Counsel for appellants shun *Ketchin* v. *Beaty*, *Haynsworth* v. *Haynsworth*, and *Seabrook* v. *Seabrook*. In not one of the cases cited by them, from *Myers* v. *Myers* down to *Wessinger* v. *Hunt*, is there a single word about gifts—by will or by deed—of personalty or of realty, to next of kin; and so they have no application. But *Ketchin* v. *Beaty*, 5 *Rich. Eq.*, does apply, and is earnestly commended to the attention of the court.

V. Mrs. Dickinson having already, as distributee, received one-half of the entire estate, her next of kin cannot take a share of what is now the subject of contention. This is the corollary from the above. The bequest is to the testator's legal representatives or next of kin—his daughters—and, consequently, they take not under the will, but as in case of intestacy. 1 *Wm. Bl.* 187; 4 *Kent* 506–7; 10 *Rich. Eq.* 504; 4 *S. C.* 18.

Mrs. Dickinson can only take what she would have taken had there been no will—that is, one-half; and this she has already had. This half has, at her death, been again distributed, and as

her *hœredes facti*, her husband took half of her share and Mrs. Moultrie the other half. Can Mr. D.'s children by a second wife now claim more than he, in right of his wife, could claim at her death ? The point seems too plain even for illustration.

*Messrs. Simonton & Barker*, for the administrator of Mrs. Dickinson, made no claim to so much of testator's estate as was received by Mrs. Moultrie as survivor of her sister; but contended that in the one-half of the estate given immediately to Mrs. M. for life, there is a remainder undisposed of, as to which testator died intestate, and one-half of which descended under the statute to Mrs. D. The following authorities were relied on in support of this position : 1 *Jarman on Wills* 502; *Amherst* v. *Lytton,* heard in the House of Lords March 11th, 1729, quoted by Lord Hardwicke in 3 *Atk.* 286; 1 *Rich Eq.* 61; 3 *Rich. Eq.* 244.

*April* 13th, 1878. The opinion of the court was delivered by

WILLARD, C. J. The question before us involves the construction of the will of Stephen Shrewsbury. The respondents have obtained a decree establishing their right on the ground of intestacy, as it regards that portion of the estate claimed by them, under the will of Mrs. Moultrie, a daughter of the testator. The appellants deny the existence of intestacy, contending that the provisions operate as a devise to them. The clauses of the will pertinent to the question are as follows : " I give, devise and bequeath to my dearly beloved daughters, Louisa Shrewsbury and Caroline Shrewsbury, share and share alike, to them and to each of them, during the term of their natural life, and from and after the decease of either the said Louisa or Caroline, then if my daughter aforesaid first dying shall leave a child or children living at her death, I give, devise and bequeath her share of the stock aforesaid to such child or children, his, her or their heirs, executors, administrators and assign forever; but if she shall have no child or children living at her death, but a husband surviving her, then my will is that her said husband shall have such a proportion thereof as the law gives of the wife's estate in case of intestacy, under the legislature of this state; and the remainder

I give to her sister, her heirs, executors, administrators and assigns forever.

"And it is further my will, that at the death of the survivor of my said daughters, Louisa and Caroline, the stock and property hereby immediately bequeathed to such survivor, or which she may take at the death of her sister, shall go to such child or children as she may leave living at her death, his, her or their executors, administrators or assigns forever. But if she shall leave no child living at her death, and shall leave a husband surviving her, then the husband shall have such a proportion of the said stock and property as the law gives of the wife's estate in case of intestacy, under the act of the legislature, and the remainder shall go to the child or children of her deceased sister, if any be living at the death of my said daughter, so surviving as aforesaid, his, her or their heirs, executors, administrators or assigns forever; and if there be no child of her deceased sister, the said remainder shall go to my legal representatives in fee simple."

Louisa and Caroline survived the testator and took equal life estates. Caroline (Mrs. Dickinson) died before her sister without issue, and leaving surviving her a husband, who received, at her death, a proportional part of Caroline's share of the estate, according to the provisions of the will. The residue of Caroline's share went by way of remainder to Louisa (Mrs. Moultrie) as surviving sister. So far the undisputed objects of the will were accomplished.

The present controversy arises out of the fact that Mrs. Moultrie, the surviving life tenant, left, at her death, neither husband nor child. She left, however, a will, under which the respondents claim. The appellants are the children of the brother of the testator, and claim that they were, at the time of the death of Mrs. Moultrie, the persons entitled to take under the description of "my legal representatives," contained in that clause of the will that disposes of the remainder in fee after the life estate of the surviving daughter, on the contingencies of there being no child or husband.

The first question to be considered is, whether there is a devise of the remainder after the life estate of the surviving daughter,

on the contingency of their being living at that time neither child nor husband? If there is such a disposition of that remainder, then it will become necessary to fix the sense of the terms " my legal representatives," as those terms describe the persons who are to take such remainder, and it will be necessary to ascertain the nature and extent of the estate thus devised by way of remainder. These questions will be separately considered in the order stated.

Is there, then, a devise of the remainder after the life estate of the surviving daughter, that can take effect in the case of the death of such surviving daughter, without leaving living either a child or the descendants of a child or a husband ?

This proposition is disputed by the respondents. They contend that the only devise by way of remainder, to take effect in the event of the death of the surviving daughter without issue, is made contingent on the further event of the survivorship of her husband. That no such contingency has happened, inasmuch as Mrs. Moultrie, such surviving daughter, left no husband living at her decease, consequently the remainder is undisposed of, so far as it regards the will, and must be disposed of under the statute of distributions.

The words of the will, as affecting such remainder, are as follows: " But if she shall leave no child living at her death, and shall leave a husband surviving her, then the husband shall have such proportion of the said stock and property as the law gives of the wife's estate in case of intestacy, under the act of the legislature, and the remainder shall go," &c.

The opposing constructions of the appellants and respondents have just this difference between them, that the respondents read this clause as intending nothing more than a devise contingent on the event of there being a husband living at the decease of the surviving daughter, while the appellants read it as intending a provision for continuing the estate in the lineage and family of the testator, saving merely that which, under the statute of distributions, would have been the rights of a surviving husband.

It may be conceded at once that it is not sufficient for the purposes of the appellants to merely interpret the language in question. A resort must be had to construction. The case expressed embraces a devise of something left—of the remainder

after something is taken out of it, viz., a provision for a surviving husband. If this expressed intent is not to be enlarged by anything whatever implied, then it must be assumed that the intention of the testator in framing these expressions was influenced by one or the other of two considerations; either that the case of his surviving daughter's death without leaving living a husband, could not or would not arise, or in case of happening, that there is no such surviving husband, there would be neither necessity or propriety for making the provision for the family intended on the event of there being a husband surviving.

If such an intention is reasonable in itself and consistent with the general provisions of the will, then the language of the devise ought to stand as we find it, and its expressed intent ought to prevail without yielding to enlargement on the principles of construction.

On the other hand, if such intention is not reasonable or consistent with the general scope of the testator's intentions, as elsewhere expressed or necessarily to be implied, then it is proper to resort to construction to find the intention of the testator in an enlarged reading of his language.

It is clear that such an intent as that just noticed cannot reasonably, or consistently with his known intentions as disclosed by the will, be ascribed to the testator. He could not have supposed the case of his surviving daughter's death without leaving a husband living, as unlikely to occur.

The survivorship of a wife, as it regards her husband, is an ordinary contingency that must be assumed to have been, as such, before the mind of the testator. Then the testator is brought into the position of contemplating the death of both of his daughters, the first dying leaving children, the survivor dying without issue.

Now, on the death of the survivor of his daughters without child, he wishes that part of the estate devised to her to pass to the children of his sister first dying, but contemplating the possibility of such surviving daughter dying without leaving surviving a husband, he determines that the provision made for his grandchildren, the children of his daughter first dying, shall depend wholly on the contingency of there being such a surviving

husband of his daughter last dying, so that if there shall be no such husband the grandchildren shall not take under such devise. Such a state of mind on the part of a testator contradicts experience and reason and cannot be assumed. ' It follows, therefore, that we must resort to construction in order to find the intent of the testator in an enlarged sense of the terms employed by him.

To what extent, then, can the words employed yield, without denying to them their proper force and effect, and what is the force of the considerations that compel the enlargement of their import?

The construction contended for by the appellants is not contradictory of anything expressed in the language under consideration. It leaves in full force the expressions of the devise as it regards the contingencies uppermost in the mind of the testator, as evinced by his express language. Nor does that construction seek to undo the force of language expressly, or by necessary implication, creating a contingency, and making subsequent limitations dependent on it. The devise to the children of the daughter first dying, in the event of the death of the surviving daughter without issue, is necessarily contingent, that contingency being a death without issue, an event possible, but uncertain. This contingency is expressly created, and is signified by the expressive words "but" and "if."

But that the provision made for the children of the daughter first dying should be subject to the further contingency that there should be living, at the death of the surviving daughter, a husband of that daughter, so that if no such husband shall be in being at that time, the limitation to them should be defeated, is not declared as any part of the actual intention of the testator, and if found to exist must be inferred from the mere fact that the devise is silent as to what shall take place if that contingency does not arise.

It is said, however, that the events of the death of the surviving daughter without issue living and that of a husband surviving her, are coupled together by the conjunction "and," and both subjected together to the intention to create a contingency expressed under the words "but" and "if." Assuming such to be the proper import of the terms, still, would that which is in

terms made to depend upon such contingency, be altered or in any way impaired under the construction contended for by the appellants? Certainly it would not.

What was intended by the interposition of this contingency, and all that was intended, was to diminish the *quantum* of the remainder by taking from it a husband's portion, what follows, to wit, the devise to the children of the sister first dying, is of that which remains after the intention leading to the creation of the contingency is fully satisfied. In other words, the full force and effect of what is intended by the contingency, viewed in the light contended for by the respondents, is accomplished without necessarily affecting the limitations to the issue of the daughter first dying to any greater extent than diminishing the amount and value of the thing so limited.

But it is said that all the provision made for children of the daughter first dying, is that which remains after the events intended by the contingency have happened, and the direct purpose of creating the contingency is satisfied, namely, a portion set apart for a husband, and that as this event has not happened they take nothing.

The question, whether words can be found sufficient to carry an intention, that the estate shall go to the children of the daughter first dying, even though the events that are contemplated by the contingency never occur, will be considered in another connection; at present the definite object is to show, as already stated, that the construction contended for by the appellants, will not undo the force of language expressly or by necessary implication creating a contingency, and making subsequent limitations dependent upon it.

The true question is, are those words in the will sufficient to disclose, with reasonable certainty, an intention that in the event that the surviving daughter should die without issue or husband, and there be living children of the sister first dying, that such children should take the estate? Although there were, in fact, no children of the daughter first dying living at the death of the surviving daughter, yet the provisions made for such children, if any there should be, is the proper test of intentions of the testator, as it regards the objects of his bounty standing next in

precedence to his daughters. It was intended as a provision for grandchildren. It was not for selected individuals, but for all his grandchildren. The devise to "legal representatives," contingent on the failure of lineal descendants, could not have so attracted the attention of the testator, as the provision made for his grandchildren. The last embraced the greater object of keeping his estate in the line of descent and of his strongest affections, the other the subordinate object of keeping it within the family. To test the mind of the testator, we must consider it in its connection with events which, at the time of settling the provision for his immediate family, were considered by him as most important, and not with the actual events that subsequently occurred. It is in this light that we refer to the effect of the various constructions contended for, upon the provisions intended for the children of the daughter first dying.

We must here ascertain the leading objects of the will. It is clear that the testator had it in mind that his estate should go in the direct line of descent as far as possible and without diminution, except to meet what he deemed to be the reasonable demands of any surviving husband of his daughters. Also, that, should there be a failure of descendants at the death of his surviving daughter, his estate should go to his collateral representatives, still keeping it within his family. He further intended that his children should stand on terms of equality as it regarded each other, and that his grandchildren should participate as representatives of their parents in the rule of equality applied to their parents. These conclusions, as to the intention of the testator, are apparent, and require no particular reference for their elucidation.

The particular object of the immediate devise under consideration, is next to be sought. It is clear that he intended, as a means of securing the general objects just stated, that if either daughter died without issue, the estate should go to the other daughter, or, if deceased, to her children, if any she had ; and that, should there be a failure of descendants in the direct line at the death of the surviving daughter, the estate should go to the collateral line in the order prescribed by the statute of distributions. He also intended that a provision for the surviving husbands of

his daughters should be separated from his estate from time to time, as might be necessary.

To arrive at the results just stated, it is only necessary to read the devise with the idea in mind that equality was intended between his daughters. Equality is favored by law and will be assumed on principles of natural equity, unless there are expressions tending to show an opposite intent on the part of the testator. In the present case, all that is expressed favors the idea that strict equality was the rule intended.

The devise must be read with these objects in view, and so reading it there can be little doubt as to the actual intention of the testator. The opposite constructions contended for correspond to two theories of the intention expressed in the devise in question. According to the one, the language of the devise covers a single disposition, subject to defined contingencies, so that nothing can flow from such disposition except through events satisfying the intention of such contingencies.

According to the other theory, the language of the devise covers two distinct intentions and dispositions, namely, a provision for grandchildren, dependent only on the condition of the death of a daughter without issue, and a provision for a surviving husband dependent on the further event of the survivorship of such husband as it regards his wife. The last named is the proposition of the appellants.

The order and sequence of the language of the devise favor the first reading, while the nature of the subject and the declared intentions of the testator support the last.

The primary sense of the words, " and the remainder shall," &c., would limit the thing intended so to go, to that which remained of the estate after taking therefrom a husband's portion. But this conclusion depends wholly on the force of the conjunction " and" preceding " the remainder." This is apparent, if the devise is read by simply omitting the word " and," and enclosing in parentheses that portion of the sentence which is assumed to relate specially to the case of a surviving husband. It would then read as follows: " But if she shall leave no child living at her death (and shall leave a husband surviving her, then the husband shall have such a proportion of the said stock

and property as the law gives of the wife's estate in case of intestacy, under the act of legislature,) the remainder shall go to the child or children of her deceased sister," &c. Omitting next the matter enclosed in parentheses, and it would read as follows: "But if she shall leave no child living at her death, the remainder shall go," &c. What remainder was intended is disclosed by the sentence of the will immediately preceding that above recited.

The whole question, as a grammatical question, is brought within these narrow limits: Is the force of the word "and" such as to defeat the manifest intention and produce a case of intestacy?

If the word in question had been used in an indisputable sense, it could find no sanction in the adjudicated cases, and the recognized principles of construction for an influence destructive of the scheme in the mind of the testator, and tending to take the estate out of his family, contrary to his clear intent. But "and" in the present case simply serves to connect successive dispositions in forming parts of a whole. In this respect it performs an office of no real importance; for by indicating, as has been done, that portion that was intended as parenthetical, the connection of the sentence is complete without the use of that word. Thus it appears that no insuperable grammatical difficulty precludes the application of the construction that comports best with the mind and objects of the testator, as indicated by the general outline of his purposes. That which really points the primary and uncorrected sense already referred to, is the connection of the words "and the remainder," for, taken together, they seem to point to a sequence between the provisions relating to a surviving husband and the provisions that follow in behalf of grandchildren. But it is a fair inquiry whether that apparent intention is real or accidental, and the fact that it is a reading that assumes the interest of a surviving husband of a daughter to stand in the mind of a grandparent before that of a grandchild, precludes the supposition that it was other than accidental.

It is less bold to assume that the ordinary flow of thought in the mind of the testator was disturbed, than that the course of

nature, as impressed upon the affections, was inverted in so unusual a manner.

It must be concluded, then, that the testator intended a provision for the children of his daughter first dying, in the event of the death of his surviving daughter, without regard to whether she did or did not leave a husband surviving her.

The very learned argument addressed to us in support of the proposition that a double contingency was intended, fails, because too exclusively resting on the nature of the expressions used, and unsupported by the nature of the subject and the general and particular end in the view and mind of the testator.

It will not be necessary to notice the various cases cited bearing on the points discussed, for the difficulties that were overcome in those cases, in order to reach the mind of the testator, do not occur in the present case.

*Statham* v. *Bell*, 1 *Cowp.* 40, will alone be noticed.   In that case the devise in terms depended on a contingency that never happened, and yet, in that case, although no general words of the will are referred to as affording ground for enlarging the construction of the words of the devise, yet it did so enlarge them as to take the estate away from the heir-at-law and confer it upon the testator's wife, in conformity to the assumed intention of the testator.

In view of that case, it is not difficult to determine the present question, in which there are no words disclosing a more general intent than that declared by the particular limitations in question, and in which the effect of enlarging the sense of the devise is to continue the estate in the hands of the family of the testator, and to prevent its passing to one that must be assumed to be a stranger to his blood.

At the death of Mrs. Moultrie, the survivor of the daughters, without issue, there were no persons who could take under the devise to the children of Mrs. Dickinson, the daughter first dying. In that case the devise to the testator's " legal representatives in fee simple ". became operative.   Who are the persons entitled to take under this description ?

At this point a question arises, whether the testator intended, by the expression " my legal representatives," such persons of the

class entitled under the statute of distributions to take, who should be living at the death of the daughter last dying.

It is contended that no such intention existed or could be operative, but that the effect of this devise is to cast the estate on those who, at the death of the testator, were entitled to take under the statute, and upon their representatives, assigns or devisees. It is under this aspect of the case that the devisee of Mrs. Moultrie now claims the estate.

The question just stated is one of intention alone, and to be gathered from the whole will. The language employed to describe the persons intended to take is indecisive, and resort must be had to the scheme of the will to render its force determinate. The key of its interpretation lies in an intention already referred to, and which, more particularly stated, is this: After the direct line of descent was exhausted, during the lifetime of the two daughters, the estate should go to the collateral line. If the estate can pass under the will of Mrs. Moultrie, then the succession of the collateral line is defeated. This clearly is contradictory of the testator's intent. The only mode of reading the language of this devise so as to preserve the intention of the testator, is to limit the devise, &c., to "legal representatives," to such as were in being at the death of the daughter last dying. It is clear that the testator referred to the statute of distributions solely for the purpose of describing the class of persons to whom he intended his estate to go, and the relative order of succession as among that class; that in conferring a contingent remainder upon individuals of that class, he intended to select as his devisees such as should appertain to that class at the time the contingency happened that should vest the estate.

This would exclude persons coming in as devisees of a person entitled to the appellation "legal representatives," but who died before the happening of the contingency that vested the estate. It would exclude the devisee and representatives of Mrs. Moultrie, because survivorship and the happening of the contingency must concur, whereas the death of Mrs. Moultrie was the very event on which the future estate to "legal representatives" depended.

It follows that at the death of Mrs. Moultrie the appellants

were the persons entitled to take under the devise to " legal representatives."

The next question is, what was the nature and extent of the estate that passed under the devise to legal representatives?

There can be no doubt on this point, as the language of the will is specific and clear. The thing devised is described under the words "stock and property." The devise in question is preceded by a statement of what is intended to be disposed of in the event of the death of the daughter last dying, namely, " the stock and property hereby immediately bequeathed to such survivor, or which she may take at the death of her sister."

It is true that by a previous clause of the will, that which the surviving daughter should take on the death of her sister without issue, was given by words importing a fee, but the subsequent clauses of the will, in terms, reduce that estate to a life tenancy. It follows, then, that what remained of the estate of her father, derived through his will in the hands of Mrs. Moultrie at her decease, passed under the will to the appellants, as devisees under the testator's will, designated by the description " my legal representatives."

The judgment must be set aside and the cause remanded to the Circuit Court for a judgment in conformity with the foregoing conclusions of this court.

Decree reversed.

McIVER and HASKELL, Associate Justices, concurred.